IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

```
_____  )
                          )
SAMUEL B. INGALL,         )
                          )
        Plaintiff,        )
                          )
     v.                   )       Civ. No. 20-00306 ACK-WRP
                          )
JOHN RABAGO; REGINALD RAMONES;)
DOE OFFICER 1; DOE OFFICER 2; )
HONOLULU POLICE DEPARTMENT;   )
CHIEF OF POLICE SUSAN M.      )
BALLARD; CITY AND COUNTY OF   )
HONOLULU; DOE DEFENDANTS 1-10;)
DOE CORPORATIONS 1-5; DOE     )
PARTNERSHIPS 1-5; DOE LLC'S   )
1-5; DOE ENTITIES 1-5; AND DOE)
GOVERNMENTAL AGENCIES 1-5,    )
                          )
        Defendants.       )
_____  )
```

## ORDER GRANTING IN PART AND DENYING IN PART THE CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS

This case stems from an incident in which a Honolulu Police Department ("HPD") officer confronted Plaintiff Samuel Ingall ("Ingall") in a public restroom and instructed him to lick a public urinal or be subject to arrest. Ingall complied with the command and was then permitted to leave. Ingall subsequently filed this action asserting several violations of state law and his federal constitutional rights. The City and County of Honolulu (the "City") now seeks dismissal of the claims asserted against it, as well as certain official-capacity claims and claims against Doe Defendants. For the reasons

- 1 -

discussed herein, the Court GRANTS IN PART AND DENIES IN PART
the City's motion.

## **FACTUAL BACKGROUND**

On January 28, 2018, Ingall—a homeless individual
residing in Honolulu—sought shelter at 808 Sheridan Street.
Complaint, ECF No. 1-2 ("Complaint"), ¶ 3, 15.  Ingall entered a
public restroom and therein was confronted by an HPD officer,
Defendant John Rabago ("Officer Rabago").  Compl. ¶ 16.  Officer
Rabago told Ingall that he would have to lick a public urinal or
else Officer Rabago would arrest him.  Id.

Officer Rabago indicated that there was a security
camera outside the restroom door but that it would only capture
the inside of the restroom if the door was open.  Compl. ¶ 18.
Another HPD officer, Defendant Reginald Ramones ("Officer
Ramones"), arrived and stood in the doorway, propping open the
door such that the security camera could capture inside the
restroom.  Compl. ¶ 17.  Officer Rabago again told Ingall to
lick the public urinal or face arrest, and then instructed
Officer Ramones to close the restroom door.  Compl. ¶ 19.
According to the Complaint, Officer Ramones closed the restroom
door in order to ensure the conduct would not be caught on
camera.  Compl. ¶¶ 20-21.

Thereafter, Officer Rabago instructed Ingall several more times to lick the urinal or face arrest. Compl. ¶ 23. It was only after Ingall eventually complied that he was permitted to gather his possessions and leave the restroom. Compl. ¶¶ 24-25.

Officer Rabago followed Ingall out of the restroom and laughed as he told two additional HPD officers who were waiting outside of the restroom that Ingall had just licked the urinal. Compl. ¶ 27. Officer Rabago told the two additional HPD officers that the incident with Ingall was "just like what happened at Cartwright Field." Compl. ¶ 28. Based on this comment, Ingall alleges that Officers Rabago and Ramones had been involved in a prior incident at Cartwright Field, and because of that prior incident both officers "knew that the threat by Defendant RABAGO towards [Ingall] was not a joke." Compl. ¶ 26.

Officers Rabago and Ramones later learned that the incident was being investigated by HPD's Professional Standards Office and could be investigated by federal authorities. Compl. ¶ 32. Upon learning this, Officer Rabago instructed Officer Ramones to delete text messages from his phone, told him not to tell authorities about what had happened, and coached him on what to say to authorities instead. Compl. ¶¶ 33-35. Officers Rabago and Ramones ultimately faced criminal charges based on

the incident with Ingall and the officers' concealing thereof, and both officers pled guilty to those charges.  Compl. ¶ 43.

Ingall now brings this civil lawsuit based on the incident, asserting claims against Officer Rabago, Officer Ramones, and against the two unidentified HPD officers who were waiting outside the restroom (Doe Defendants 1 and 2), all in their individual as well as official capacities.  Compl. ¶¶ 4-7. Ingall also asserts claims against HPD, the City, and Chief of Police Susan Ballard ("Chief Ballard") in her official capacity. Compl. ¶¶ 8-11.  Finally, Ingall asserts claims against unidentified Doe Defendants.  Compl. ¶ 12.  Ingall brings claims for negligence, negligent hiring, negligent infliction of emotional distress, intentional infliction of emotional distress, false imprisonment, assault and battery, and a claim under 42 U.S.C. § 1983 for violations of his Fourth, Eighth, and Fourteenth Amendment rights.  Compl. ¶¶ 45-79.  He seeks general damages as well as punitive damages.  Compl. ¶ 82.

Ingall originally filed his Complaint in state court on January 28, 2020, and he served the Complaint on the City on July 7.  Compl., see also Mot., ECF No. 5, at 6.  The City removed the case to federal court on July 15, ECF No. 1, and filed a motion to dismiss on July 27, ECF No. 5.  Plaintiff filed his opposition on September 1, ECF No. 10, and the City

filed its reply on September 8, ECF No. 11.  A telephonic
hearing was held on September 22.

### STANDARD

Rule 12(b)(6) authorizes the Court to dismiss a
complaint that fails "to state a claim upon which relief can be
granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in
conjunction with Rule 8(a), which requires only "a short and
plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8
does not require detailed factual allegations, "it demands more
than an unadorned, the-defendant-unlawfully-harmed-me
accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct.
1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d
929 (2007)).  "A pleading that offers 'labels and conclusions'
or 'a formulaic recitation of the elements of a cause of action
will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).

The Court must "accept as true all well-pleaded
allegations of material fact, and construe them in the light
most favorable to the non-moving party."  Sateriale v. R.J.
Reynolds Tobacco Co., 697 F.3d 777, 784 (9th Cir. 2012)
(citation omitted).  "To survive a motion to dismiss, a
complaint must contain sufficient factual matter to 'state a

claim to relief that is plausible on its face.'"  Id. (quoting
Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing
Twombly, 550 U.S. at 556).

        "[T]he tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to
legal conclusions."  Id. (citing Twombly, 550 U.S. at 555).
Accordingly, "[t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice."  Id.  "The plausibility standard . . . asks for more
than a sheer possibility that a defendant has acted unlawfully."
Id.  "Where a complaint pleads facts that are 'merely consistent
with' a defendant's liability, it 'stops short of the line
between possibility and plausibility of entitlement to relief.'"
Id. (quoting Twombly, 550 U.S. at 557).

        When the Court dismisses a complaint pursuant to Rule
12(b)(6) it should grant leave to amend unless the pleading
cannot be cured by new factual allegations.  OSU Student All. v.
Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

Ingall brings a series of state law claims against the City, as well as a claim under 42 U.S.C. § 1983 for violating his Fourth, Eighth, and Fourteenth Amendment rights.  In opposing the City's Motion, Ingall makes a number of concessions that limit his claims.  The Court begins there.  After distilling what claims remain—namely, his claim under § 1983—the Court will turn to the parties' arguments thereon.

I.   **Concessions for Dismissal**

Ingall makes four concessions for dismissal in his opposition: (1) as to the state law claims asserted against the City; (2) as to certain Doe Defendants; (3) as to certain duplicative official-capacity and entity claims; and (4) as to punitive damages.

A.   **State Law Claims**

The City argues that all claims against it should be dismissed pursuant to Hawaii Revised Statutes ("HRS") § 46-72.  That provision requires a plaintiff to give notice to the City within two years of his injuries in order to hold the City liable.  Mot. at 5.  Ingall's injuries occurred on January 28, 2018, and the City was first given notice when it was served with Ingall's Complaint on July 7, 2020.  Mot. at 6.  Because more than two years had elapsed, the City argues that § 46-72 bars Ingall's claims against it.

- 7 -

Ingall concedes that § 46-72 controls with respect to his state law claims, but argues that it does not apply to his constitutional claim brought under § 1983.[1/]  Opp. at 7-9. Accordingly, the Court DISMISSES the state law claims asserted against the City WITHOUT PREJUDICE.

The City argues that § 46-72 also bars the claim asserted under § 1983 based on Ingall's failure to give notice to the City within two years, despite that his Complaint was filed within two years.  Mot. at 7.  The City cites Bernhardt v. Cty. of Hawai`i, No. 19-CV-00209-DKW-KJM, 2019 WL 4308533, at *4 (D. Haw. Sept. 11, 2019) for this point, but Bernhardt did not address § 1983 claims.  This Court has previously explained that "to the extent that H.R.S. § 46-72 could be read to contain a notice of claim requirement for a § 1983 action, any such notice of claim requirement would be preempted by § 1983." Sadri v. Ulmer, No. CIV. 06-00430 ACK-KS, 2007 WL 869192, at *4 (D. Haw.

---

[1/] Specifically, Ingall states that while "Plaintiff is willing to concede that HRS § 46-72 controls with respect to notice of the state claims against the county, caselaw is clear that this notice provision does not extend to Plaintiff's federal 1983 claims."  Mot. at 8.  Ingall's concession that § 46-72 "controls" is apparently an admission that under that statute, Ingall's notice was not timely because the remainder of Ingall's opposition only addresses the § 1983 claim.  If Ingall did not intend to concede all of his state law claims against the City, his failure to address the City's arguments thereon would constitute waiver for the purposes of this motion regardless.  Yonemoto v. McDonald, No. CIV. 11-00533 JMS, 2015 WL 1863033, at *7 (D. Haw. Apr. 22, 2015) ("Plaintiff ignores that he waived this argument by failing to raise it in opposition to Defendant's Motion to Dismiss"); see also Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (alterations in original) (quoting Jenkins v. Cty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005))).

Mar. 21, 2007) (citing <u>Ellis v. City of San Diego, Cal.</u>, 176
F.3d 1183, 1191 (9th Cir. 1999) ("A civil rights plaintiff
cannot be required by state law to give a prospective defendant
'notice' of an intention to sue because § 1983, which exists to
vindicate important federally created rights, preempts state
notice-of-claim statutes."); <u>Felder v. Casey</u>, 487 U.S. 131, 153,
108 S. Ct. 2302, 2314, 101 L. Ed. 2d 123 (1988)).

The Court holds that the § 1983 claims are not barred
by HRS § 46-72.[2/]

**B.  Doe Defendants**

The City argues that pleading Doe Defendants is
improper and that all Doe Defendants should be dismissed.  Mot.
at 24-25.  Ingall argues that keeping Does 1 and 2 is proper
given the specific identifiers provided.  Based on this
argument, the Court understands Ingall to consent to the
dismissal of all remaining Doe Defendants aside from Does 1
and 2.  Accordingly, all remaining Doe Defendants are DISMISSED
WITHOUT PREJUDICE.  As to Does 1 and 2, the Court agrees that
Ingall has provided sufficient identifiers to permit discovery.

---

[2/] The City appears to characterize the bar implemented by HRS § 46-72
as depriving the Court of subject matter jurisdiction.  <u>See</u> Mot. at 4-7, 25.
In response, Ingall spends several pages reviewing the basis for the Court's
subject matter jurisdiction.  Opp. at 5-9.  Having found that § 46-72 does
not apply to § 1983 claims, the Court need not further analyze subject matter
jurisdiction since it clearly has original jurisdiction over the § 1983
claims under 28 U.S.C. § 1331:  "The district courts shall have original
jurisdiction of all civil actions arising under the Constitution, laws, or
treaties of the United States."

Courts in the Ninth Circuit have recognized that "[g]enerally, 'Doe' pleading is improper in federal court. The Federal Rules do not provide for the use of fictitious defendants." Buckheit v. Dennis, 713 F. Supp. 2d. 910, 918 n.4 (N.D. Cal. 2010) (citing Bogan v. Keene Corp., 852 F.2d 1238, 1239 (9th Cir. 1988); Fifty Assocs. v. Prudential Ins. Co., 446 F.2d 1187, 1191 (9th Cir. 1970); and McMillan v. Dept. of the Interior, 907 F. Supp. 322 (D. Nev. 1995)).

When situations arise, however, "where the identity of alleged defendant[] [is] not [] known prior to the filing of a complaint," a plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (alterations in original) (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).   While "a plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3 . . . he must go further and allege facts to support how each particular [D]oe [D]efendant violated" the law.   Seina v. Fed. Det. Ctr. Honolulu, No. CV 16-00051 LEK/BMK, 2016 WL 916367, at *9 (D. Haw. Mar. 7, 2016).

Here, Ingall identifies Does 1 and 2 as the two police officers who stood outside of the restroom during the incident

and who were told by Officer Rabago about the incident.  The Court rejects the City's argument that if Ingall "had earnestly sought to identify the names of the two Doe officers so that he could name them in the Complaint, Plaintiff could have obtained a copy of his HPD police report."  Reply at 11.  This argument is premature at the motion to dismiss stage.  The Court expects that Ingall will be able to identify the officers through the very type of discovery that the City suggests.

The Court denies the City's Motion to the extent that it seeks dismissal of Does 1 and 2.

**C.   Duplicative Official-Capacity and Entity Claims**

The City argues the claims against the HPD officers in their official capacities and against HPD itself are duplicative of the claims brought against the City and should therefore be dismissed.  Mot. at 23-24.  Ingall states that he "will concede to dismissing Officer Ramones, and Rabago in their <u>official</u> capacities only and to dismissing the Honolulu Police Department."  Opp. at 13.  Accordingly, the official-capacity claims against Officers Ramones and Rabago and against HPD are DISMISSED.

Ingall argues that Chief Ballard should remain in her official capacity because she is liable for supervisory liability.  Opp. at 13.  Ingall misunderstands the nature of official-capacity suits.  As the Supreme Court has explained:

> Official-capacity suits . . . "generally represent
> only another way of pleading an action against an
> entity of which an officer is an agent." Monell
> v. New York City Dept. of Social Services, 436 U.S.
> 658, 690, n. 55, 98 S. Ct. 2018, 2035, n.55, 56 L.
> Ed. 2d 611 (1978). As long as the government
> entity receives notice and an opportunity to
> respond, an official-capacity suit is, in all
> respects other than name, to be treated as a suit
> against the entity. It is not a suit against the
> official personally, for the real party in interest
> is the entity.

Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105,

87 L. Ed. 2d 114 (1985); see also Vance v. Cty. of Santa Clara,

928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[I]f individuals are

being sued in their official capacity as municipal officials and

the municipal entity itself is also being sued, then the claims

against the individuals are duplicative and should be

dismissed."); Carnell v. Grimm, 872 F. Supp. 746, 752 (D. Haw.

1994) (dismissing claims against police officers sued in their

official capacities as duplicative of claims against the City

and County of Honolulu).

In contrast, "[s]upervisory liability is imposed

against a supervisory official in his individual capacity."

Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)

(separately addressing official-capacity liability). "A

supervisor can be liable in his individual capacity for his own

culpable action or inaction in the training, supervision, or

control of his subordinates; for his acquiescence in the

constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)). Ingall has not named Chief Ballard in her individual capacity but will be permitted leave to do so if he chooses to file an amended complaint.

Ingall does not address Does 1 and 2, who are also named in their official capacities. Compl. ¶¶ 6-7. Because Ingall has named the City as a Defendant in this case, the Court finds that all of the official-capacity claims against individual officers are necessarily duplicative as a matter of law and are accordingly DISMISSED WITH PREJUDICE.[3]

**D.  Punitive Damages**

In his Complaint, Ingall seeks punitive damages. The City argues that it is immune from punitive damages, Mot. at 23, and Ingall "concedes that punitive damages are not available against the City," Opp. at 13. Accordingly, the claim for punitive damages against the City is DISMISSED WITH PREJUDICE.

---

[3] Although Ingall concedes to dismissal of certain official-capacity claims and the claims against HPD, he seeks their dismissal without prejudice. Opp. at 13. Because those claims are duplicative as a matter of law, no factual allegations can revive them and dismissal with prejudice is therefore appropriate. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012) (dismissal with prejudice is appropriate when "the pleading cannot be cured by new factual allegations").

## II.   Incorporation by Reference

In his opposition, Ingall requests that the Court incorporate by reference the guilty pleas entered in the criminal cases against Officers Rabago and Ramones, which are mentioned in his Complaint.  Opp. at 1-2; Compl. ¶ 43.  The City confirmed at the hearing on this motion that it has no objection to the Court incorporating the guilty pleas by reference.

The Court may consider documents incorporated by reference into the Complaint without converting a motion to dismiss into one for summary judgment.  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  The doctrine of incorporation by reference applies "if the plaintiff refers extensively to the document [in his complaint] or the document forms the basis of the plaintiff's claim."  Id. (citations omitted).  On the other hand, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document."  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (quoting Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Ingall's Complaint explicitly references the guilty pleas entered by Officers Rabago and Ramones, which involve those officers' admissions of guilt as to the very events underlying this civil suit.  Compl. ¶ 43.  The Court accordingly finds that incorporation by reference is appropriate here,

especially in light of the City's concession on the point.  The Court hereinafter refers to the guilty pleas when relevant to Ingall's arguments.

## III. Section 1983

The remainder of Ingall's claims are brought under § 1983 for the violation of his Fourth, Eighth, and Fourteenth Amendment rights.

### A.   Municipal Liability Under § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (citations omitted).  A "person" includes local government entities.  Monell, 436 U.S. at 690; see also Park v. City and Cty. of Honolulu, 292 F. Supp. 3d 1080, 1090 (D. Haw. 2018).

To hold a municipality liable under <u>Monell</u>, a plaintiff must show that the municipality had a policy, practice, or custom that was the moving force behind a violation of his constitutional rights. <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900 (9th Cir. 2011). Specifically, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which []he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." <u>Id.</u> (quoting <u>Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill</u>, 130 F.3d 432, 438 (9th Cir. 1997)) (some alterations in original); <u>see also</u> <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992).

Ingall pleads three theories of municipal liability. First, Ingall alleges that the City ratified the conduct of the individual officers. Compl. ¶ 76. Second, Ingall alleges a failure to train. Compl. ¶ 77; <u>see also</u> Opp. at 9-10. Third, Ingall alleges a failure to supervise.[4] Compl. ¶ 77; Opp. at 12-13. The Court addresses each theory.

---

[4] In his opposition, Ingall argues that the failure to supervise is a separate basis for municipal liability. Opp. at 12-13. In so arguing, Ingall asserts that "[a] supervisor is liable under Section 1983 for a subordinate's constitutional violations if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Opp. at 12-13. The quotation relates to supervisory liability which, as explained above, is a theory to hold a supervisor individually liable, not a separate way to allege municipal liability. A (Continued . . .)

**B.   Ratification**

Initially, in addition to his explicit claim under the ratification theory of liability, the Court construes Ingall's allegations regarding a failure to discipline as a type of ratification claim.  Rabinovitz v. City of Los Angeles, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018) ("Where a plaintiff alleges that a municipality's conduct runs afoul of section 1983 for the city's failure to discipline its employees, the claim is understood as one for ratification.").

"To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (internal quotation marks and citations omitted); see also Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992) (requiring the policymaker to have made "a conscious, affirmative choice").  "Neither a policymaker's mere knowledge of, nor the policymaker's mere refusal to overrule or discipline, a subordinate's unconstitutional act suffices to

---

plaintiff may, however, allege municipal liability based on inadequate supervision by showing the City's deliberate indifference, and the Court addresses that theory below.  Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602–03 (9th Cir. 2019) ("municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker"); Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) ("Canton dealt specifically with [municipal liability for] inadequate training.  We see no principled reason to apply a different standard to inadequate supervision.").

show ratification." Rabinovitz, 287 F. Supp. 3d at 967 (citing Christie, 176 F.3d at 1239 and collecting cases).

The only factual allegations in Ingall's Complaint as to disciplinary action state that HPD's Professional Standards Office conducted an investigation regarding the incident during which Officers Rabago and Ramones actively concealed information from investigators. Compl. ¶ 32 (stating that HPD's Professional Standards Office investigated the incident); ¶¶ 33-35 (stating that Officers Rabago and Ramones actively concealed the events surrounding the incidents from investigators). Indeed, Ingall clearly lays this out where he explains that "Defendant RAMONES purposefully did not disclose the felony to anyone, and Defendant RAMONES took affirmative steps with Defendant RABAGO to conceal the felony." Compl. ¶ 41.

Critically, aside from his naming the failure to discipline theory of liability, Ingall never alleges that HPD in fact failed to discipline the officers. Ingall's allegations that HPD conducted an investigation when HPD learned of the misconduct and that Officers Rabago and Ramones were subsequently criminally prosecuted for the conduct, Compl. ¶ 43, suggest that disciplinary action did in fact occur with respect to this incident. Even if it did not, Ingall must allege that the policymakers approved of the basis of the officers'

decisions; failure to discipline alone is insufficient.
Christie, 176 F.3d at 1239.

Ingall's Complaint also references a prior "Cartwright Field Incident" that he alleges was substantially the same as his own encounter with Officer Rabago.  Compl. ¶ 26, 28.  At the hearing on this motion, Ingall argued that the prior incident suggests that the City might have failed to discipline the officers because, had the officers been properly disciplined for the prior incident, the incident now at issue would never have occurred.  But Ingall explains that policymakers were never made aware of this incident.  Specifically, Ingall states that Officers Rabago, Ramones, Doe 1, and Doe 2 "knew of Defendant RABAGO's previous behavior and knowing deprivation of an individual's constitutional rights and failed to intervene, report and/or prevent the next incident from occurring."  Compl. ¶ 74; see also Opp. at 10 (discussing the "reference made to other police officers" regarding "another incident at Cartwright Field" and stating that "nothing was reported").  In the absence of an allegation that policymakers were aware of the incident, a ratification theory fails.

As discussed in the failure to train section below, Ingall also argued at the hearing on this motion that Officer Ramones' guilty plea references "previous occasions"—emphasizing occasions, plural—potentially providing an additional incident

for which the officers were not disciplined.  Opp., Ex. 4 at 5.
But neither the guilty pleas nor the Complaint provide this
Court with allegations as to what any prior incidents involved,
whether policymakers were aware of any other incidents, or
whether the officers were in fact disciplined for those prior
incidents.  The Court finds that the vague reference to Officer
Ramones' knowledge of "previous occasions" in his guilty plea is
insufficient to show ratification by the City.

Because Ingall has not alleged that HPD in fact failed
to discipline the officers, approved the basis for the officers'
decisions, or was aware of any prior incident, Ingall fails to
state a ratification claim.

C.   **Failure to Train**

Ingall also alleges that Chief Ballard failed to
adequately train the individual officers.  To allege § 1983
municipal liability based on a failure to train, Ingall must
claim that (1) Chief Ballard, the identified policymaker for
HPD, "was deliberately indifferent to the need to train" the
officers about the use of excessive force, unreasonable seizure,
and severe punishment with respect to incidents of this type;
and (2) "that the lack of training actually caused the . . .
violation[s] in this case."  Connick v. Thompson, 563 U.S. 51,
59, 131 S. Ct. 1350, 1358, 179 L. Ed. 2d 417 (2011); see also
Compl. ¶ 9-10 (identifying Chief Ballard as the HPD's Chief of

Policy "responsible for the instruction, training, and supervision of the Honolulu Police Department's members").

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Id. at 61.  "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train" since, unless the City is on notice that a course of training is deficient, it "can hardly be said" to have acted with deliberate indifference.  Connick, 563 U.S. at 62.  Nevertheless, the Supreme Court has "sought not to foreclose the possibility, however rare," that in certain situations "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."  Id. at 64.

In either case, "[a]bsent allegations of specific shortcomings in the training of City police officers or facts that might place the City on notice that constitutional

deprivations were likely to occur, Plaintiff has not adequately pled a § 1983 claim against the City for failure to train." Bini v. City of Vancouver, 218 F. Supp. 3d 1196, 1203 (W.D. Wash. 2016).

As explained above, Ingall does not allege that the City or any of its policymakers—specifically including Chief Ballard, the identified relevant policymaker here—were on notice that constitutional deprivations were likely to occur.  Rather, Ingall alleges that HPD officers hid information regarding the incident involving Ingall and the prior "Cartwright Field Incident."  Compl. ¶¶ 33-35 (stating Officers Rabago and Ramones hid the incident involving Ingall from the authorities); ¶ 74 (stating officers failed to intervene or report the prior Cartwright Field Incident); see also Opp. at 10.  Because Ingall's allegations are that Officers Rabago and Ramones acted in a facially malicious manner, the Court notes the difficulty HPD would have in predicting their actions in the absence of prior misconduct.  See generally Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 3203-04, 82 L. Ed. 2d 393 (1984) ("Arguably, intentional acts are even more difficult [for the state] to anticipate [than negligent acts] because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent.").

At the hearing on this motion, Ingall argued that he had adequately alleged a pattern of prior violations.   Ingall pointed to Officer Ramones' guilty plea, which states that Officer Ramones was aware "Rabago had on previous occasions" violated individuals' Fourth Amendment rights.   Opp., Ex. 4 at 5.   Ingall emphasizes that the guilty plea's reference to prior occasions is plural and argues that this reference to multiple prior occasions creates the requisite pattern of similar violations.   The Court notes that Ingall did not make this argument in his opposition.   Regardless, the Court finds the guilty plea's reference to "previous occasions" is insufficient because there is still no allegation that the City was on notice of any of the alleged prior incidents.

The Court also finds that this is not the type of case where "a violation of federal rights [was] a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations" such that the City can be said to have been deliberately indifferent in the absence of a pattern of prior violations.   Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997).   Assuming the truth of Ingall's allegations, Officers Rabago and Ramones were acting entirely out of line with what should have been self-evident expectations of civility.   The flagrantly offensive nature of

the conduct alleged does not support the conclusion that the violation was a highly predictable consequence of a failure to train.  Rather, because "the proper response" should have been "obvious to all without training or supervision," the failure to train or supervise was "not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1160 (9th Cir. 2014) (quoting Walker v. City of New York, 974 F.2d 293, 299–300 (2d Cir. 1992)).

Further, while Ingall generally alleges that Chief Ballard failed to train or supervise her officers "that use excessive force and/or exposed Plaintiff to conditions that amount to unreasonable seizure and/or severe punishment," Compl. ¶ 77; he fails to identify any specific deficiency in the current training program.  "Allegations of inadequate training are insufficient where they do not identify what the training practices were, how the training practices were deficient, or how the training caused the specific Plaintiff's harm." Hyer v. City & Cty. of Honolulu, No. CV 19-00586 HG-RT, 2020 WL 3440934, at *8 (D. Haw. June 23, 2020) (citation omitted).  Again, the facially malicious conduct by Officers Rabago and Ramones suggests that proper training would have made no difference in this case.

Ingall cites Dawkins v. City of Honolulu, 761 F. Supp. 2d 1080, 1087 (D. Haw. 2010) for the proposition that the statement made by Officer Rabago as to the prior Cartwright Field Incident "give[s] rise to a claim under municipal liability pursuant to the need for better training, supervision, or discipline." Opp. at 10-11.  This Court has previously held that "Dawkins's ruling on the Monell-based failure to train and/or supervise claim seems questionable under cases such as City of Canton." Long v. Yomes, No. CIV. 11-00136 ACK, 2011 WL 4412847, at *5 n.8 (D. Haw. Sept. 20, 2011); see also Manda v. Albin, No. 5:19-CV-01947-EJD, 2019 WL 6311380, at *8 (N.D. Cal. Nov. 25, 2019) ("This Court agrees with the Long court—one event is insufficient to establish failure to train or supervise."). The Court reiterates that concern here.

Further, because the Dawkins decision discussed a single incident in which an officer tased, punched, kicked, and arrested an individual, the court there presumably found the case to sufficiently allege the rare situation where the unconstitutional consequences of failing to train should have been patently obvious even without a pattern of similar violations. See Dawkins, 761 F. Supp. 2d at 1087.  The Court has already explained why that theory does not apply to the facts alleged here.  The Court also notes that, in articulating the exception, the Supreme Court specifically gave the

hypothetical example of use of force cases.  Connick, 563 U.S. at 63-64 (discussing Canton, 489 U.S. at 390 & n.10; Bryan Cty., 520 U.S. at 409).[5/]  That may have been applicable in Dawkins, but is not applicable here.

Because Ingall has not alleged a pattern of similar violations, has not alleged facts that show the unconstitutional consequences should have been patently obvious, and has not alleged particular deficiencies in the current training program, the Court finds that he has failed to state a claim for municipal liability under the failure to train theory.

D.    **Failure to Supervise**

A failure to supervise claim is subject to the same standard as a failure to train claim:  a plaintiff must allege that "the training or supervision is sufficiently inadequate as to constitute 'deliberate indifference' to the [rights] of persons with whom the police come into contact." Davis, 869 F.2d at 1235 (citing Canton, 489 U.S. 378).  This requires the

---

[5/] The Supreme Court's hypothetical example of case that may not require a pattern of similar constitutional violations in order to state a failure to train claim specifically related to the use of force:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.  The city has armed its officers with firearms, in part to allow them to accomplish this task.  Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

City of Canton, 489 U.S. at 390 n.10 (citation omitted).

plaintiff to allege that the City "was on actual or constructive notice that this failure to supervise would likely result in a constitutional violation." Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014). A plaintiff must also allege that the failure to supervise "was the cause of the constitutional violation here." Id. For the same reasons discussed with relation to the failure to train claim, the Court finds that Ingall has failed to state a failure to supervise claim.

First, there are no allegations that the City was on notice of the alleged shortcomings in its supervision. Instead, Ingall alleges only one prior incident which the officers intentionally concealed. Cf. Jackson, 749 F.3d at 763 (finding a plaintiff alleged "actual or constructive notice" by stating that the police officer "routinely declined to read Miranda warnings"); Kaahu v. Randall, No. CV 14-00266HG-RLP, 2018 WL 472996, at *17 (D. Haw. Jan. 18, 2018) (finding the elements met on a failure to supervise claim because "the Defendant City and County had knowledge that Defendant Officers Valdez and Randall had a history of inappropriate behavior while on duty"); Lacy v. Cty. of San Diego, No. 12-CV-624-MMA JMA, 2012 WL 4111507, at *3 (S.D. Cal. Sept. 18, 2012) (finding a plaintiff stated a failure to supervise claim where he alleged "that the County had prior knowledge of incidents of misconduct and civil rights violations

by other deputies and the same deputies involving similar facts").

Second, the malicious nature of the conduct alleged here suggests that the officers would have committed the same offensive acts even if they were subject to adequate supervision.  Because "the proper response" should have been "obvious to all without training or supervision," these allegations do not support a finding of deliberate indifference. Flores, 758 F.3d at 1160.

Because Ingall has not alleged that the City was on notice or otherwise alleged facts that support a finding of deliberate indifference, he has failed to state a failure to supervise claim.

**IV.  Constitutional and Statutory Violations**

The City's Motion makes brief arguments as to why Ingall has not stated a claim of any underlying constitutional violation.  Mot. at 19-21 (individually addressing the Fourth, Eighth, and Fourteenth Amendment).  Ingall's opposition focuses on the theories for attributing the officers' conduct to the City, but only makes general, conclusory arguments that the underlying violations have been sufficiently stated.  See generally Opp.  Ingall's failure to sufficiently address the arguments as to the existence of underlying constitutional

violations provides an additional reason to dismiss Ingall's Monell claims.

The Court notes, however, that the incorporated guilty pleas expressly provide that Officers Rabago and Ramones knowingly violated Ingall's Fourth Amendment rights.  Opp., Exs. 3 & 4.  Had Ingall successfully raised a basis on which to impute the officers' misconduct to the City, the Court would likely have let the Fourth Amendment claim proceed on the basis of the incorporated guilty pleas.

The City's Motion also characterizes Ingall as asserting a conspiracy claim under 42 U.S.C. § 1985(3).  Mot. at 20-21.  Ingall does not assert a cause of action under § 1985(3) and his opposition does not address the City's argument thereon. The Court accordingly does not construe the Complaint as asserting a § 1985(3) claim.  To the extent that the Complaint does suggest such a claim, the Court finds that Ingall has waived the claim for purposes of opposing this motion by choosing not to oppose the City's argument thereon.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the City's Motion to Dismiss, ECF No. 5, and DISMISSES Ingall's claims as follows:

- Ingall's state-law claims against the City are DISMISSED WITHOUT PREJUDICE;

- All Doe Defendants except for Does 1 and 2 are DISMISSED WITHOUT PREJUDICE;

- The claims against HPD and the official-capacity claims against the HPD officers are DISMISSED WITH PREJUDICE;

- The punitive damages claim against the City is DISMISSED WITH PREJUDICE; and

- The § 1983 claim against the City is DISMISSED WITHOUT PREJUDICE.

The Court DENIES the City's Motion as to its argument that HRS § 46-72 bars the § 1983 claim, and as to its argument for dismissal of Does 1 and 2.

Because Ingall may be able to cure some of the pleading defects via amendment, leave to amend is granted for the claims identified above as dismissed without prejudice. Any amended complaint must be filed within thirty days of the issuance of this Order and should comply with the guidance and standards set forth herein. Failure to file an amended complaint within thirty days may result in this action being dismissed with prejudice. The Court emphasizes that it has not granted Ingall leave to make other changes, such as adding new parties or entirely new claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, September 24, 2020.



_____
Alan C. Kay
Sr. United States District Judge


<u>Ingall v. Rabago, et al.</u>, Civ. No. 20-00306 ACK-WRP, Order
Granting in Part and Denying in Part the City and County of
Honolulu's Motion to Dismiss.