IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAMUEL B. INGALL, | ) CIVIL NO. 20-00306 DKW-WRP |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO GRANT |
| vs. | ) PLAINTIFF'S MOTION FOR |
| | ) DEFAULT JUDGMENT AGAINST |
| JOHN RABAGO, REGINALD | ) DEFENDANT JOHN RABAGO |
| RAMONES, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

FINDINGS AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANT JOHN RABAGO

Before the Court is Plaintiff's Motion for Default Judgment against

Defendant John Rabago (Motion), ECF No. 65.  The Court found the Motion

suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local

Rules of Practice of the United States District Court for the District of Hawaii.  See

Minute Order, ECF No. 66.  The Court FINDS AND RECOMMENDS that

Plaintiff's Motion be GRANTED.[1]

---

[1] Within fourteen days after a party is served with the Findings and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written
objections in the United States District Court.  A party must file any objections
within the fourteen-day period to preserve appellate review of the Findings and
Recommendation.

BACKGROUND

Plaintiff alleges that on January 28, 2018, Plaintiff was in a public restroom at 808 Sheridan Street in Honolulu, Hawaii, seeking shelter.  See First Amended Complaint (FAC), ECF No. 15, ¶ 12.  While Plaintiff was in the public restroom, Defendant Rabago, an officer with the Honolulu Police Department, confronted Plaintiff and, in an aggressive tone, informed Plaintiff that the only way he could avoid arrest was by licking the urinal.  See id. ¶ 13.  Defendant Ramones, another Honolulu Police Department police officer, stood in the restroom doorway, propping open the door.  See id. ¶ 14.  After repeating the order to Plaintiff, Defendant Rabago instructed Defendant Ramones to close the restroom door because the officers knew that there was a video camera in the hallway pointing into the restroom when the door was open, and they wanted to ensure that the misconduct would not be caught on videotape.  See id. ¶¶ 15-17.  Defendant Ramones moved away from the door, allowing the restroom door to close with Defendant Ramones, Defendant Rabago, and Plaintiff inside.  See id. ¶ 18.  With the restroom door closed, Defendant Rabago again repeated the order multiple times to Plaintiff, instructing Plaintiff to lick the urinal or face arrest.  See id. ¶ 20.  Against his will, Plaintiff knelt before the urinal and licked the urinal.  See id. ¶ 21.  Only after forcing and observing Plaintiff lick the urinal did Defendant Rabago allow Plaintiff to gather his possessions and leave the restroom.  See id. ¶ 22.

2

Defendant Rabago followed Plaintiff out of the restroom and laughed as he told other Honolulu Police Department officers that Plaintiff had just licked the urinal. See id. ¶ 24.

After the incident, Defendant Rabago and Defendant Ramones learned that their actions were being investigated. See id. ¶ 29. Defendant Rabago instructed Defendant Ramones to mislead the investigators regarding what had happened with Plaintiff and to delete all text messages between them. See id. ¶¶ 30-39. Following an investigation by federal authorities, Defendant Ramones and Defendant Rabago were charged and pled guilty on criminal charges related to the incident. See id. ¶ 40 (citing United States of America vs. Reginald Ramones, CR. NO. 19-00139 LEK and United States of America vs. John Rabago, CR. NO. 19-00040 LEK).

In his First Amended Complaint, Plaintiff asserts claims for negligent infliction of emotional distress, intentional infliction of emotional distress, false imprisonment, and assault and battery against the Defendant Rabago and Defendant Ramones. See id. ¶¶ 42-54.[2] In addition to these state law claims,

---

[2] Although the First Amended Complaint included claims against Doe Defendants, Plaintiff has not taken any action to identify those Doe Defendants, amend his complaint to name those Doe Defendants, or serve any amended complaint on those Doe Defendants. All claims against the other named Defendants in this action have been dismissed. See Order Granting in Part and Denying in Part the City and County of Honolulu's Motion to Dismiss, ECF No. 13; Order Granting in Part and Denying in Part the City and Chief Ballard's

Plaintiff also asserts a claim under 42 U.S.C. § 1983 for violation of his Fourth, Eighth, and Fourteenth Amendment rights.  See id. ¶¶ 55-107.  However, Plaintiff previously conceded that his Eighth Amendment claim should be dismissed.  See Order Granting in Part and Denying in Part the City and Chief Ballard's Motion to Dismiss, ECF No. 25, at 13 (dismissing Plaintiff's Eighth Amendment claim against the City and County of Honolulu and Chief of Police Susan M. Ballard based on Plaintiff's concession that he was not imprisoned at the time of the incident).  The Motion makes no arguments regarding each specific claim and states generally that "the complaint sufficiently alleges Plaintiffs' [sic] claims." See Pl.'s Mot., ECF No. 65-1, at 5.  Based on the record before the Court, the Court will consider whether Plaintiff is entitled to default judgment against Defendant Rabago on the state law claims and the Section 1983 claim for violation of Plaintiff's Fourth and Fourteenth Amendment rights.

After the Court granted Plaintiff additional time to serve the First Amended Complaint, Defendant Rabago was served on April 1, 2021.  See Minute Order dated 3/22/2021, ECF No. 35; Waiver of Service, ECF No. 41.  Defendant Ramones was also served on April 1, 2021, but filed a Notice of Bankruptcy Filing on May 24, 2021.  See Notice, ECF No. 43.  Since that time, this action has been

---

Motion to Dismiss, ECF No. 25.  Only the claims against Defendant Rabago and Defendant Ramones remain active in this litigation.

stayed as to Defendant Ramones.  <u>See</u> Minute Order dated 5/25/2021, ECF No. 44;

Minute Order dated 6/2/2022, ECF No. 53; Minute Order dated 9/7/2022; Minute

Order dated 3/15/2023, ECF No. 56.  Default was entered against Defendant

Rabago on May 27, 2022.  <u>See</u> Entry of Default, ECF No. 51.  The present Motion

followed.

DISCUSSION

Default judgment may be entered if the defendant has defaulted by

failing to appear and the plaintiff's claim is for a "sum certain or for a sum which

can by computation be made certain."  Fed. R. Civ. P. 55(b)(1), (2).  The granting

or denial of a motion for default judgment is within the discretion of the court.

<u>Haw. Carpenters' Trust Funds v. Stone</u>, 794 F.2d 508, 511-12 (9th Cir. 1986).

Default judgments are ordinarily disfavored, and cases should be decided on their

merits if reasonably possible.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir.

1986).  The court should consider the following factors in deciding whether to

grant a motion for default judgment:

> (1)  the possibility of prejudice to the plaintiff;
> (2)  the merits of plaintiff's substantive claim;
> (3)  the sufficiency of the complaint;
> (4)  the sum of money at stake in the action;
> (5)  the possibility of a dispute concerning material facts;
> (6)  whether the default was due to excusable neglect; and
> (7)  the strong policy underlying the Federal Rules of Civil
>      Procedure favoring decisions on the merits.

<u>Id.</u> at 1471-72.

5

On default "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)). The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

As a preliminary matter, the Court must address whether default judgment against Defendant Rabago is premature given that the claims against Defendant Ramones remain active, albeit stayed. See In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001) (citing Frow v. De La Vega, 82 U.S. 552, 554 (1872)) (holding that where the defendants are "similarly situated" default judgment "should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants"). In deciding whether default judgment against a co-defendant is appropriate, courts must consider whether it would be "incongruous and unfair" for a plaintiff to obtain judgment against a defaulting defendant on a legal theory that may be ultimately rejected with regard

6

to the answering defendant in the same action.  See id.; see also Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1008 (N.D. Cal. 2001) ("Frow's applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.").  This rule prevents an "incongruous and illegal" result of a plaintiff receiving one judgment on a claim against the defaulting defendant, but another judgment rejecting the same claim against the answering defendant.  See id. (citing Frow, 82 U.S. at 554).

Here, the Court finds that default judgment against Defendant Rabago is appropriate because there is no risk of incongruous or unfair results.  The claims against each Defendant are based on their own actions and do not automatically implicate the other.  In other words, whether Defendant Rabago is liable to Plaintiff for the claims alleged in the First Amended Complaint has no bearing on the determination of whether Defendant Ramones is liable.  Further, any concern regarding inconsistent results is tempered by the fact that Defendant Rabago and Defendant Ramones both admitted to the facts and pled guilty for subjecting Plaintiff to the acts alleged in the First Amended Complaint.  See FAC, ECF No. 15, ¶ 40 (citing the Memoranda of Plea Agreements in United States of America vs. Reginald Ramones, CR. NO. 19-00139 LEK and United States of America vs. John Rabago, CR. NO. 19-00040 LEK).  The Court finds that the active claims

7

against Defendant Ramones[3] do not prevent the Court from proceeding with default judgment against Defendant Rabago.

## A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether or not it has subject matter jurisdiction over this action and personal jurisdiction over Defendant Rabago. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

### 1. Subject Matter Jurisdiction

The Court has federal question jurisdiction over Plaintiff's claims for violations of his Fourth and Fourteenth Amendment rights pursuant to 28 U.S.C. §

---

[3] Based on the record before the Court, it is unclear whether Plaintiff intends to pursue his claims against Defendant Ramones, who has filed for Chapter 13 bankruptcy, or whether the bankruptcy would discharge any debt related to this action. See 11 U.S.C. § 1328(a)(4) (providing that a debtor shall be granted "discharge of all debts . . . except any debt . . . for [damages] awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual"). In his Status Reports to the Court for the past two years, Plaintiff has represented that he is continuing to "research whether the automatic stay can and/or should be lifted," but has not taken any further action. See Status Report filed 6/3/2022, ECF No. 52; Status Report filed 9/2/2022, ECF No. 54 (same); Status Report filed 12/6/2022, ECF No. 55, (same); Status Report filed 5/8/2023, ECF No. 57 (same); Status Report filed 11/21/2023, ECF No. 59 (same); Status Report dated 2/26/2024, ECF No. 60 (same); Status Report filed 5/28/2024, ECF No. 63 (same).

1331 and has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

### 2. Personal Jurisdiction

Personal jurisdiction is proper if it is consistent with Hawaii's long arm statute, and it comports with due process of law.  See Boschetto v. Hansing, 539 F.3d 1011, 1021-22 (9th Cir. 2008).  Because Hawaii's long arm statute reaches to the full extent permitted by the United States Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction.  See Television Events & Mktg., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 958 (D. Haw. 2006) (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800–01 (9th Cir. 2004)); Haw. Rev. Stat. § 634-35.

Regarding personal jurisdiction over Defendant Rabago, the First Amended Complaint alleges that Defendant Rabago is a resident of Hawaii.  See FAC, ECF No. 15, ¶ 4.  However, the Waiver of Service indicates that the First Amended Complaint was mailed to Defendant Rabago at an address in California. See Wavier of Service, ECF No. 41.  Given the conflicting information in the record, the Court considers whether it has personal jurisdiction over Defendant Rabago as a nonresident.

For due process to be satisfied, a nonresident defendant must have "minimum contacts" with the forum state such that the assertion of jurisdiction

9

"does not offend traditional notions of fair play and substantial justice." Pebble

Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing Int'l Shoe Co. v.

Wash., 326 U.S. 310, 315 (1945)).  Here, the Court must determine whether it has

specific jurisdiction over Defendant Rabago.  Specific jurisdiction exists if (a) the

defendant has purposefully directed its action or consummated some transaction

within the forum or otherwise purposefully availed himself of the privileges of

conducting activities in the forum; (b) the claim arises out of or results from the

defendant's forum related activities; and (c) the exercise of jurisdiction is

reasonable.  See Boschetto, 539 F.3d at 1021.

### a. Purposeful Direction

First, to show purposeful direction, "the defendant allegedly must

have (1) committed an intentional act, (2) expressly aimed at the forum state, (3)

causing harm that the defendant knows is likely to be suffered in the forum state."

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199,

1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted).  Here,

Defendant Rabago committed intentional acts against Plaintiff in Hawaii knowing

that Plaintiff would likely suffer harm in Hawaii.  Accordingly, the Court

concludes that Defendant Rabago's contacts with Hawaii are sufficient to show

purposeful direction.

10

### b. Claims Arise Out of Forum-Related Activities

Second, for specific personal jurisdiction, the claim asserted in the litigation must arise out of the defendant's forum-related activities.  See Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007).  Plaintiff must show that he would not have been injured "but for" Defendant Rabago's conduct directed toward the forum.  Id.  Here, as noted above, Defendant Rabago's contacts with Hawaii are his intentional acts against Plaintiff in Hawaii.  If not for Defendant Rabago's conduct, Plaintiff would not have been injured.  Accordingly, the Court concludes that the second requirement for specific personal jurisdiction is met.

### c. Reasonableness of Exercise of Jurisdiction

Finally, to satisfy due process, the exercise of personal jurisdiction must be reasonable.  See Menken, 503 F.3d at 1057 (citations omitted).  To determine reasonableness, the Court must balance seven factors:  "(i) the extent of the defendant's purposeful interjection into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (vii) the existence of an alternative forum."  Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp., 905 F.3d 597, 607 (9th Cir. 2018) (citation omitted).

Here, the Court finds that these factors weigh in favor of finding that the exercise of jurisdiction over Defendant Rabago comports with the notions of fair play and substantial justice.  First, the degree of Defendant Rabago's interjection weighs in favor of finding jurisdiction.  Defendant Rabago's acts were committed against Plaintiff in Hawaii.  Second, the burden on Defendant Rabago, a resident of California, to litigate in Hawaii is significant; however, the inconvenience is not so great as to deprive him of due process, particularly given Defendant Rabago's purposeful actions in Hawaii.  See Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128-29 (9th Cir. 1995) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'")).  Third, there is no indication that the court's exercise of jurisdiction in Hawaii would conflict with the sovereignty of California.  Fourth, Hawaii has a "strong interest in providing an effective means of redress for its residents who are tortiously injured." Resnick v. Rowe, 283 F. Supp. 2d 1128, 1141 (D. Haw. 2003) (quoting Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1070 (D. Haw. 2000)).  Because Plaintiff was a Hawaii resident at the time of the incident, this factor weighs in favor of finding jurisdiction.  Fifth, considering of the most efficient judicial resolution, witnesses and evidence are located in both Hawaii and

California.  This factor is neutral.  Sixth, although it would be more costly and

inconvenient for Plaintiff to litigate in another forum, this factor is given little

weight.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir.

1998).  Seventh, Plaintiff has not demonstrated the unavailability of an alternative

forum.  See id.  However, because Defendant Rabago has not come forward to

request an alternative forum, this factor is neutral.  Balancing these seven factors,

the Court concludes that the exercise of specific personal jurisdiction over

Defendant Rabago is reasonable.

In conclusion, the Court finds that the requirements for the exercise of

specific personal jurisdiction are satisfied.  Because the Court has found that

subject matter and personal jurisdiction are appropriate, the Court turns to default.

### B. Eitel Factors

Following a determination that jurisdiction is proper, the Court must

consider whether default judgment is appropriate under the Eitel factors outlined

above.

### 1. The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if

default judgment were not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.

Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, absent entry of default judgment,

Plaintiff would be without another recourse for recovery against Defendant

Rabago.  Accordingly, the first <u>Eitel</u> factor favors default judgment.

## 2. Merits of Plaintiff's Substantive Claims

As noted above, for purposes of liability the factual allegations in the complaint are taken as true on default.  <u>See</u> <u>TeleVideo Sys., Inc.</u>, 826 F.2d at 917-18; <u>Fair Hous. of Marin</u>, 285 F.3d at 906.  Here, the allegations in Plaintiff's First Amended Complaint, taken as true, establish that Plaintiff is entitled to default judgment against Defendant Rabago.

### a.  Negligent Infliction of Emotional Distress (Count I)

To prove negligent infliction of emotional distress (NIED) under Hawaii law, the plaintiff must show: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  <u>See</u> <u>Tran v. State Farm Mut. Automobile Ins. Co.</u>, 999 F. Supp. 1369, 1375 (D. Haw.1998).  The Court finds that Plaintiff sufficiently states a claim for NIED.  As detailed above, the act that caused harm was Defendant Rabago forcing Plaintiff to lick a urinal or face arrest.  Plaintiff alleges that this act was negligent and caused extreme emotional distress to Plaintiff.  The Court finds that Plaintiff's factual allegations, taken as true, are sufficient to establish that Plaintiff is entitled to default judgment against Defendant Rabago for negligent infliction of emotional distress.

14

**b. Intentional Infliction of Emotional Distress (Count II)**

To prove intentional infliction of emotional distress (IIED) under

Hawaii law, the plaintiff must show: (1) the act that caused the harm was

intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme

emotional distress to another.  See Smallwood v. NCsoft Corp., 730 F. Supp. 2d

1213, 1235 (D. Haw. 2010) (citing Young v. Allstate Ins. Co., 198 P.3d 666, 692

(Haw. 2008)).  This tort requires conduct "exceeding all bounds usually tolerated

by decent society and which is of a nature especially calculated to cause, and does

cause, mental distress of a very serious kind." Id. (quoting Hac v. Univ. of Haw.,

73 P.3d 46, 60 (Haw. 2003)).  The Court finds that Plaintiff sufficiently states a

claim for IIED.  As detailed above, Defendant Rabago forced Plaintiff to lick a

urinal or face arrest.  This conduct was outrageous and beyond the bounds usually

tolerated by a decent society.  Plaintiff has also alleged that Defendant Rabago's

conduct caused him extreme emotional psychological distress.  The Court finds

that Plaintiff's factual allegations, taken as true, are sufficient to establish that

Plaintiff is entitled to default judgment against Defendant Rabago for intentional

infliction of emotional distress.

**c. False Imprisonment (Count III)**

To prove false imprisonment under Hawaii law, the plaintiff must

show: (1) the detention of one against his will, and (2) the unlawfulness of such

detention.  See Reed v. City & Cnty. of Honolulu, 873 P.2d 98, 109 (Haw. 1994)

(citations omitted).  In the First Amended Complaint, Plaintiff alleges that

Defendant Rabago detained Plaintiff against his will in the bathroom and refused

to let him leave unless he licked the urinal.  The Court finds that Plaintiff's factual

allegations, taken as true, are sufficient to establish that Plaintiff is entitled to

default judgment against Defendant Rabago for false imprisonment.

### d. Assault and Battery (Count IV)

"A person commits the common law tort of assault if he or she acts

with intent to cause another a nonconsensual harmful or offensive contact or

apprehension thereof, and the other person apprehends imminent contact."

Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1223 (D. Haw. 2001), aff'd, 85 F.

App'x 631 (9th Cir. 2004).  To show battery, a plaintiff must allege an unlawful

touching.  See Ozaki v. Association of Apartment Owners, 954 P.2d 652, 668

(Haw. Ct. App.1998), aff'd in part, rev'd in part on other grounds, 954 P.2d 644

(Haw. 1998).  In the First Amended Complaint, Plaintiff alleges that Defendant

Rabago repeatedly instructed Plaintiff to lick the urinal and refused to let him leave

until he complied.  Plaintiff's allegations are sufficient to show that the Defendant

Rabago's actions caused an offensive and harmful contact by forcing Plaintiff to

lick the urinal.  The Court finds that Plaintiff's factual allegations, taken as true,

are sufficient to establish that Defendant Rabago assaulted Plaintiff.

16

**e. Violation of Plaintiff's Fourth and Fourteenth Amendment Rights (Count V)**

To establish a violation of the protections against unreasonable search and seizure under Fourth Amendment, Plaintiff must prove "unreasonable intrusions on one's bodily integrity, [or] other harassing and abusive behavior that rises to the level of 'unreasonable seizure.'" Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir. 2001) (quoting Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2001)).  "Assessing the Constitutionality of police action during a seizure involves 'a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" Id. at 880 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  Plaintiff alleges that after Defendant Rabago arrived at the scene to investigate a call, Defendant Rabago refused to let Plaintiff leave the bathroom, instructed Defendant Ramones to close the door, and forced Plaintiff to lick a urinal.  The Court finds that Plaintiff's factual allegations, taken as true, are sufficient to establish that Defendant Rabago's harassing and abusive behavior violated Plaintiff's Fourth Amendment rights.

To establish a violation of the substantive due process protections under Fourteenth Amendment, Plaintiff must prove that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S.

17

833, 848 n.8 (1998).  As noted above, Plaintiff alleges that after Defendant Rabago arrived at the scene to investigate a call, Defendant Rabago refused to let Plaintiff leave the bathroom, instructed Defendant Ramones to close the door, and forced Plaintiff to lick a urinal.  The Court finds that Plaintiff's factual allegations, taken as true, are sufficient to establish that Defendant Rabago's behavior shocked the conscience and violated Plaintiff's Fourteenth Amendment rights.

### 3. Sufficiency of the Complaint

The allegations in the First Amended Complaint are sufficiently pled and supported by the Motion.  The Court finds that the sufficiency of the First Amended Complaint weighs in favor of default judgment.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citing Eitel, 782 F.2d at 1472).  Here, Plaintiff seeks an award of $580,000 in general and punitive damages.  See Pl.'s Mot., ECF No. 65-1, at 5.  Although, as discussed below, the Court finds that the specific amount of requested damages are excessive, Plaintiff's requested damages against Defendant Rabago are tailored to his specific wrongful conduct.  The Court finds that this factor weighs in favor of default judgment.

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the First Amended Complaint, except those relating to the amount of damages, will be taken as true.  TeleVideo Sys., Inc., 826 F.2d at 917-18.  Defendant Rabago has been given a fair opportunity to defend this action and has not done so.  Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

### 6. Whether Default was Due to Excusable Neglect

Plaintiff served Defendant Rabago on April 1, 2022.  See Waiver of Service, ECF No. 41.  Defendant Rabago did not file a response to Plaintiff's First Amended Complaint or respond to Plaintiff's request for entry of default, which Defendant Rabago was served with by mail on May 26, 2022.  See Cert. of Service, ECF No. 50-4.  In addition, Plaintiff served Defendant Rabago with notice of this Motion on July 15, 2024.  See Cert. of Service, ECF No. 65-6.  Despite ample notice of this lawsuit and Plaintiff's intent to seek default judgment, Defendant Rabago has not appeared in this matter to date.  The record suggests that Defendant Rabago's default was not the result of any excusable neglect, but rather due to Defendant Rabago's conscious and willful decision not to defend this action.  Consequently, this factor favors default judgment.

19

### 7. Policy Favoring Decisions on the Merits

Defendant Rabago's default makes a decision on the merits impractical, if not impossible.  Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh Eitel factor is not alone dispositive").  Here, Defendant Rabago has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendant Rabago.

### 8. Totality of Eitel Factors

The Court finds that the totality of the factors weighs in favor of entering default judgment in Plaintiff's favor and against Defendant Rabago.

### C. Damages

Under Rule 55, the Court may conduct a hearing on a motion for default judgment when it needs to determine the amount of damages.  See Fed. R. Civ. P. 55(b)(2).   However, if damages are capable of being determined from documentary evidence or affidavits, default judgment may be entered without a hearing.  See United States v. Yermian, 2016 WL 1399519, at *3 (C.D. Cal. Mar.

18, 2016) ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment.").

In his Motion, Plaintiff requests an award of $580,000 in "general/punitive damages" for the "severe emotional distress, humiliation, fear, and trauma" that Plaintiff has sustained due to Defendant Rabago's "malicious, willful, wanton and sadistic actions." Pl.'s Mot., ECF No. 65-1, at 5. To support these damages, Plaintiff submitted a Declaration stating that since the incident he has "suffered ongoing severe emotional distress and mental anguish and/or PTSD." Pl.'s Decl., ECF No. 69, ¶ 11. Plaintiff also states that he suffers from depression, anxiety, and fear related to the incident and that he has had repeated nightmares over the incident. See id. ¶ 12. Plaintiff states that because of the incident, he had to leave Hawaii because everyone he knew was aware of the incident and that made it "even more distressing, traumatizing, humiliating and stigmatizing" to him. Id. Plaintiff states that he should be on medication for anxiety and depression, but he is unable to afford these medications. See id. ¶ 13.

### 1. General Damages

Compensatory damages are recoverable under Section 1983 for injuries including "personal humiliation, and mental anguish and suffering." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986). Likewise, under

Hawaii law, damages recoverable in tort actions "include damages for pain and suffering, mental anguish, disfigurement, loss of enjoyment of life, loss of consortium, and all other nonpecuniary losses or claims."  Warren v. United States, 669 F. Supp. 3d 987, 1026 (D. Haw. 2023) (citing Haw. Rev. Stat. § 663-8.5(a)). However, courts recognize that damages for pain and suffering are difficult to measure in precise monetary terms.  See Kanahele v. Han, 125 Haw. 446, 451 (2011) (citation omitted) ("General damages encompass all the damages which naturally and necessarily result from a legal wrong done, . . . and include such items as pain and suffering, inconvenience, and loss of enjoyment which cannot be measured definitively in monetary terms.").  Although "[t]here is no precise calculation which will determine what is fair and reasonable compensation for pain and suffering," Lauer v. Young Men's Christian Ass'n of Honolulu, 557 P.2d 1334, 1340 (Haw. 1976), the Court should award what is fair and reasonable considering "the nature and extent of the injuries, the suffering occasioned by the injuries, and the duration and pain [of them]."  Id.  "District courts in this circuit, noting the dearth of Ninth Circuit case law on how to evaluate the amount of damages claimed for emotional distress in the default judgment context, have adopted the approach used by courts in the Second Circuit," namely, "to compare the damages sought in default judgment to jury awards in similar cases."  ACF 2006 Corp v. L. Offs. of Michael J. Libman APC, No. CV 19-2920-DMG (JCX),

2020 WL 7038384, at *5 (C.D. Cal. Oct. 7, 2020) (citing Brantley v. Boyd, No. C

07-6139 MMC, 2013 WL 3766911, at *8 (N.D. Cal. July 16, 2013) (collecting

cases)).

As detailed above, Plaintiff was traumatized and humiliated following

the incident, suffers from depression, anxiety, and fear related to the incident, and

has had repeated nightmares over the incident. See Pl.'s Decl., ECF No. 69, ¶¶ 11-

13. In addition to the Declaration provided by Plaintiff, the Court has also

considered awards in other cases involving police misconduct that did not result in

serious physical injury. The Court finds that the $580,000 in damages requested

by Plaintiff is excessive in light of the nature and extent of Plaintiff's injuries and

awards in other cases for police misconduct that does not result in serious bodily

injury. See Bell v. Williams, 108 F.4th 809, 835 (9th Cir. 2024) (finding a jury

award of $504,000 grossly excessive in case involving excessive force against an

amputee pretrial detainee where he was made to hop on his one leg and was carried

by his handcuffed arms and leg and stating that "we find it difficult to conceive

that [the plaintiff's] emotional distress and pain and suffering could be valued

reasonably anywhere above $150,000"). Instead, based on the evidence submitted

by Plaintiff and the Court's review of jury awards for constitutional violations by

police officers that did not result in seriously bodily harm, the Court finds that an

award of $40,000 in compensatory damages is fair and reasonable compensation

23

for Plaintiff's pain and suffering.  See, e.g., Okosi v. Roby, No. 1:21-CV-11884-IT, 2024 WL 1152554, at *2 (D. Mass. Feb. 6, 2024) (denying motion for new trial following jury award of $17,500 in compensatory damages against a police officer who shoved the plaintiff against a door and filed a false report against the plaintiff); Mendez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 47 (1st Cir. 2009) (affirming jury award of $35,000 and $50,000 in compensatory damages for emotional distress against city official who instructed police officers to threaten and illegally detain the plaintiffs); Bloom v. City of Scottsdale, 977 F.2d 587 (9th Cir. 1992) (affirming jury award of $50,000 for emotional distress against police officers who illegally searched the home of the plaintiff, who was a child at the time, and did not give consent for the search); Chalmers v. City of L.A., 762 F.2d 753, 761 (9th Cir. 1985) (affirming jury award of $12,500 for psychological harm based on the "anguish, embarrassment, anxiety, and humiliation" that the plaintiff suffered after police officers harassed and threatened her with arrest for selling t-shirts on the street).   Accordingly, the Court FINDS and RECOMMENDS that the district court award Plaintiff $40,000 in general damages for humiliation and emotional distress.

### 2. Punitive Damages

In Section1983 cases, punitive damages are recoverable "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others."

Smith v. Wade, 461 U.S. 30, 56 (1983); Morgan v. Woessner, 997 F.2d 1244, 1255

(9th Cir. 1993). Section 1983 punitive damages can also be awarded to address

"malicious, wanton, or oppressive acts or omissions." Dang v. Cross, 422 F.3d

800, 807 (9th Cir. 2005). Conduct is oppressive "if done in a manner which

injures or damages or otherwise violates the rights of another person with

unnecessary harshness or severity as by misuse or abuse of authority or power, or

by taking advantage of some weakness or disability or the misfortunes of another

person." Id. at 809. The purpose of punitive damages is "punishing unlawful

conduct and deterring its repetition." State Farm Mut. Auto. Ins. Co. v. Campbell,

538 U.S. 408, 416-17 (2003).

Here, the Court finds that Plaintiff is entitled to an award of punitive

damages against the Defendant Rabago because his abuse of power was done with

reckless and callous disregard of Plaintiff's rights. Specifically, Defendant

Rabago's hostility for Plaintiff who had taken shelter in the restroom was evident

from his repeated instructions to Plaintiff to lick the urinal or face arrest, and then

he subjected Plaintiff to further humiliation by telling the other officers on scene

what he had done when Plaintiff exited the restroom. In addition to this initial

misconduct, Defendant Rabago subsequently encouraged Defendant Ramones to

mislead investigators regarding the incident. The Court finds that punitive

25

damages are recoverable in this case against Defendant Rabago.

In considering the amount to award in punitive damages, the Court should consider the following: 1) the reprehensibility of the conduct; 2) the award should bear a reasonable relationship to the harm suffered or to the compensatory damages; and 3) the award should be comparable to civil penalties or punitive damages imposed in comparable cases. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 574-86 (1996).

First, reprehensibility falls along a scale, with "acts and threats of violence at the top, followed by acts taken in reckless disregard for others' health and safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence." Swinton v. Potomac Corp., 270 F.3d 794, 818 (9th Cir. 2001) (internal citation and quotation marks omitted). Although Defendant Rabago's conduct was an abuse of power that disregarded Plaintiff's health and resulted in significant emotional distress, Plaintiff "did not incur physical pain and [was] not beaten or injured as is frequently the case when punitive damages are considered." Smith v. City of Oakland, No. 07-6298 MHP, 2011 WL 5325484, at *2 (N.D. Cal. Nov. 3, 2011). Second, as detailed above, the Court finds that an award of $40,000 in compensatory damages is appropriate and recognizes that the award of punitive damages must be reasonable in comparison. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) (declining "to impose a bright-line ratio" but

26

noting that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process").  Third, the Court considers jury awards of punitive damages in cases that similarly involve police misconduct that did not result in seriously bodily injury.  See, e.g., Okosi v. Roby, 2024 WL 1152554, at *2 (denying motion for new trial following jury award of $75,000 in punitive damages against a police officer who shoved the plaintiff against a door and filed a false report against the plaintiff); Lindsey v. Butler, 647 F. Supp. 3d 128, 141-42 (S.D.N.Y. 2022) (finding jury award of $50,000 in punitive damages appropriate against police officers who forced the plaintiff to the ground and shaved his face, which was against his religious beliefs); Smith v. City of Oakland, No. 07-6298 MHP, 2011 WL 5325484 (N.D. Cal. Nov. 3, 2011) (approving jury award of punitive damages in the amount of $25,000 and $15,000 to the plaintiffs who were subjected to public strip searches by police); Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1171 (N.D. Cal. 2009), amended in part, No. C 05-02935 MEJ, 2009 WL 10736653 (N.D. Cal. Sept. 8, 2009) (finding jury award of $30,000 in punitive damages appropriate against police officer who placed the plaintiff in a chokehold and then colluded with other officers to fabricate a story against the plaintiff).  Based on the Court's consideration of the relevant guideposts, the Court finds that an award of $80,000 is appropriate.  Accordingly, the Court FINDS and RECOMMENDS that the

27

district court award Plaintiff $80,000 in punitive damages against Defendant Rabago.

CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff's Motion for Default Judgment Against Defendant John Rabago be GRANTED.  The Court RECOMMENDS that the district judge GRANT default judgment in favor of Plaintiff and against Defendant Rabago and AWARD Plaintiff $40,000 in general damages and $80,000 in punitive damages against Defendant Rabago.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, AUGUST 23, 2024.



Wes Reber Porter
United States Magistrate Judge

**INGALL vs. RABAGO, ET AL.; CIVIL NO. 20-00306 DKW-WRP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOHN RABAGO**